1  HULETT HARPER STEWART LLP
   DENNIS STEWART, SBN: 99152
2  JENNIFER A. KAGAN, SBN: 234554
3  550 West C Street, Suite 1600
   San Diego, CA  92101
4  Telephone:    (619) 338-1133
   Facsimile:    (619) 338-1139
5  e-mail:  dstewart@huletttharper.com
            jenni@huletttharper.com
6
7  Attorneys for Plaintiff, ROBERT H. STEINBERG
   [Additional Counsel Listed on Signature Page]
8
9            IN THE UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11 ROBERT H. STEINBERG, Individually and     Case No. C08-0240
   on Behalf of all Others Similarly Situated,
12                                           CLASS ACTION COMPLAINT
                  Plaintiff,
13
14 v.

15 MATSON NAVIGATION COMPANY,
   INC., ALEXANDER & BALDWIN, INC.,
16 HORIZON LINES, INC., AND HORIZON
   LINES, LLC,
17                                           JURY TRIAL DEMANDED
                  Defendants.
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

1    Plaintiff Robert H. Steinberg, brings this action under the federal antitrust laws, Sections 4
2    and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, on behalf of himself individually and on behalf of
3    a plaintiff class (the "Class") consisting of all persons and entities in the United States, and its
4    territories and possessions, who purchased domestic ocean shipping services between the United
5    States and Hawaii ("noncontiguous domestic ocean shipping") directly from a Defendant between
6    at least as early as four years from the present (the "Class Period"), to recover treble damages,
7    injunctive relief, and the costs of suit, including reasonable attorneys' fees and experts' fees, for
8    the injuries to the Plaintiff and members of the proposed Class he represents.

9    **JURISDICTION AND VENUE**

10    1.    This action is brought pursuant to 15 U.S.C. §§ 15 and 26 to recover treble
11    damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries
12    sustained by Plaintiff and the members of the Class by reason of the violations, as hereinafter
13    alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1. This action is also brought to secure
14    injunctive relief against Defendants to prevent them from further violating Section 1 of the
15    Sherman Act, as hereinafter alleged.

16    2.    Jurisdiction in this Court derives from 28 U.S.C. §§ 1331 and 1337 and Sections 4
17    and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

18    3.    Venue lies in this district pursuant to 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C.
19    § 391(b) and (c). Venue is proper here because during the Class Period one or more of the
20    Defendants resided, transacted business, was found, or had agents in this district, and because a
21    substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of
22    the affected interstate trade and commerce described below has been carried out in this district.

23    **THE PARTIES**

24    **Plaintiff**

25    4.    Plaintiff Robert H. Steinberg ("Plaintiff"), is a resident of West Palm Beach,
26    Florida. During the relevant time period, Plaintiff purchased domestic ocean shipping services on
27    a noncontiguous domestic route between the continental United States and Hawaii directly from
28    one or more of the Defendants. The prices that Plaintiff paid to Defendants or their co-

1

CLASS ACTION COMPLAINT

1  conspirators were higher than they would have been in the absence of the conspiracy, and as a
2  result of the alleged conspiracy, Plaintiff was injured by reason of the antitrust violations alleged
3  herein.

4  **Defendants**

5      5.      Defendant Matson Navigation Company, Inc. ("Matson"), is a Hawaiian
6  corporation with its principal place of business in Oakland, California. Matson is a wholly-owned
7  subsidiary of Defendant Alexander & Baldwin, Inc.   Matson is the principal carrier of
8  noncontiguous domestic ocean cargo between the U.S. Pacific Coast and Hawaii. Matson sold
9  noncontiguous domestic ocean shipping services to customers in the United States and its
10  territories and possessions during the Class Period.

11      6.      Defendant Alexander & Baldwin, Inc. ("A&B") is a Hawaiian corporation with its
12  principal place of business in Honolulu, Hawaii. A&B is a multi-industry corporation whose
13  ocean transportation operations are conducted by its wholly-owned subsidiary Matson. By and
14  through Matson, A&B sold noncontiguous domestic ocean shipping services to customers in the
15  United States and its territories and possessions during the Class Period.

16      7.      Defendant Horizon Lines, Inc. ("Horizon") is a Delaware corporation with its
17  principal place of business in Charlotte, North Carolina. Through its operating subsidiary Horizon
18  Lines, LLC, Horizon sold noncontiguous domestic ocean shipping services to customers in the
19  United States and its territories and possessions during the Class Period.

20      8.      Defendant Horizon Lines, LLC ("Horizon LLC"), is a Delaware limited liability
21  company with its principal place of business in Charlotte, North Carolina. Horizon LLC is a
22  wholly owned operating subsidiary of Defendant Horizon. Horizon LLC, after Matson, is the
23  second largest carrier of noncontiguous domestic ocean cargo between the U.S. Pacific Coast and
24  Hawaii. Horizon LLC sold noncontiguous domestic ocean shipping services to customers in the
25  United States and its territories and possessions during the Class Period.

26  **Agents and Co-Conspirators**

27      9.      Whenever in this Complaint reference is made to any act, deed or transaction of
28  any corporation, the allegation means that the corporation engaged in the act, deed or transaction

2

CLASS ACTION COMPLAINT

1    by or through its officers, directors, agents, employees or representatives while they were actively

2    engaged in the management, direction, control or transaction of the corporation's business or

3    affairs.

4          10.    Various other persons, firms and corporations, not named as Defendants in this

5    Complaint, have participated as co-conspirators with Defendants in the violations alleged herein.

6    In order to engage in the offenses charged and violations alleged herein, these co-conspirators

7    have performed acts and made statements in furtherance of the antitrust violations and

8    conspiracies alleged herein.

9    <div align="center">**TRADE AND COMMERCE**</div>

10         11.    During the Class Period, Defendants sold substantial quantities of noncontiguous

11   domestic ocean shipping services in a continuous and uninterrupted flow of interstate and

12   international commerce to customers throughout the United States.

13         12.    The business activities of Defendants that are the subject of this action were within

14   the flow of, and substantially affected, interstate and foreign trade and commerce.

15   <div align="center">**FACTUAL ALLEGATIONS**</div>

16   **Background of Domestic Ocean Shipping**

17         13.    Noncontiguous domestic ocean shipping takes place between the United States and

18   Hawaii, Puerto Rico, and Alaska and other U.S. Pacific Islands.  Foreign competition is restricted

19   on these shipping routes allowing Matson and Horizon to control the bulk of the Hawaii market,

20   resulting in an oligopolistic market.

21         14.    There are other substantial barriers to entry into the domestic ocean carriage

22   industry which affect U.S. competition as well including, *inter alia*: the high costs of purchasing

23   and maintaining an ocean transport fleet and equipment; constraints on port space; and entrenched

24   market positions of the incumbents.

25         15.    In addition, competition from air and surface transportation is necessarily limited

26   due to lack of availability, large enough and affordable air cargo space, and the trans-ocean

27   shipping that must occur.

28

<div align="center">3</div>

CLASS ACTION COMPLAINT

1    16.    Despite the existence of a regulatory scheme over noncontiguous domestic trade
2 routes, the imposition of certain unreasonable fuel and other surcharges and rate increases as well
3 as price fixing, collusion, allocation of customers, capacity restrictions, and other anti-competitive
4 conduct is not exempt under the regulatory scheme and such actions remain illegal under the
5 Sherman Act.

6 **Defendants' Antitrust Violations**

7    17.    On or about April 17, 2008, the U.S. Department of Justice ("DOJ") said it had
8 opened an investigation into possible anti-competitive practices in the coastal freight shipping
9 industry.

10    18.    Matson, by and through A&B and Horizon, simultaneously disclosed the
11 investigation.  Horizon's headquarters in Charlotte, North Carolina, were raided by federal agents
12 armed with search warrants.  A&B disclosed it would receive a subpoena for documents and also
13 verified it does not ship between the U.S. and Puerto Rico while Horizon ships between the U.S.
14 and Puerto Rico and Hawaii.  The press releases disclose that pricing practices are being
15 investigated and that these practices are, therefore, focused on Hawaii and Puerto Rico
16 noncontiguous domestic trade routes to the U.S. coasts, at a minimum.

17    19.    To obtain search warrants the United States had to have probable cause, accepted
18 by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of
19 executing the search warrant – that is, the United States had to have evidence sufficient to warrant
20 a person of reasonable caution to believe that raiding the offices of a seemingly lawful business
21 would uncover evidence of antitrust violations and that claimed evidence had to have been
22 examined and accepted by a magistrate.  That belief, which was recounted in sworn affidavits or
23 by testimony, must be grounded on reasonably trustworthy information.

24    20.    Competitors offering domestic ocean shipping services compete largely based on
25 price.  Such services are, therefore, highly fungible between such ocean carriers who largely do
26 not have to worry about any substitute methods of transportation as competition due to the limited
27 capacity and high costs of shipping large, bulky goods by air and the lack of road or rail routes
28 when shipping over the Pacific and Atlantic oceans.

4

CLASS ACTION COMPLAINT

1      21.    As such, price fixing and market allocation become easier to attain within a highly

2 concentrated, fungible market for which adequate substitutes do not exist as in this market.

3      22.    The structure of these noncontiguous domestic ocean shipping trade routes makes

4 secret price-fixing feasible. The market is highly concentrated with few sellers, and is dominated

5 by the Defendants. Demand is inelastic. There are barriers to entry in the form of expensive

6 machinery and economies of scale. There is a high ratio of fixed to variable costs.

7      23.    Each of the Defendants is a member of the Maritime Cabotage Task Force

8 ("MCTF"), which was founded on September 27, 1995 to protect the U.S. maritime cabotage laws.

9 The MCTF's Board of Directors includes Philip Grill of Matson, and Chuck Raymond and Robert

10 Zuckerman of Horizon LLC. These trade association meetings were utilized to foster and further

11 the conspiracy alleged herein.

12      24.    The Defendants have ready access to industry data that facilitates effectuation and

13 monitoring of the conspiracy. The Port Import Export Reporting Service ("PIERS"), collects and

14 distributes, for a fee, data for the maritime industry. This data includes, for example, container

15 size and quantity, cargo quantity and unit of measure, cargo weight and volume. This data

16 allowed Defendants to monitor the conspiracy.

17      25.    Defendants have raised certain prices and fuel surcharges in lockstep during the

18 relevant period as indicated on the following chart:

19                **Hawaiian Ocean Shipping Rate Increases March 2004 – March 2008**
                 **Matson Navigation Company, Inc. and Horizon Lines, Inc.**

| Company | Date of Announcement | Effective Date | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|---|
| Matson Navigation | 3/1/2004 | 3/14/2004 | 7.5 to 8% | | |
| *Horizon Lines* | Unknown | Approx 3/2004 | 7.5 to 8% | | |
| | | | | | |
| Matson Navigation | Approx. 6/2004 | 6/2004 | 8 to 8.8% | | |
| *Horizon Lines* | 6/2004 | 6/2004 | 8 to 8.8% | | |
| | | | | | |

5

| Company | Date of Announcement | Effective Date | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|---|
| Matson Navigation | 10/8/2004 | 10/18/2004 | 8.8 to 9.2% | | |
| *Horizon Lines* | 10/8/2004 | 10/18/2004 | 8.8 to 9.2% | | |
| *Horizon Lines* | 9/7/2005 | 9/15/2005 | 11.5 to 14% | | |
| Matson Navigation | 9/9/2005 | 10/2/2005 | 11.5 to 13% | | |
| Matson Navigation | 11/10/2005 | 1/1/2006 | | $125/Westbound $75/Eastbound Approx. 3.9% | $60/Westbound $30/Eastbound Approx. 22% |
| *Horizon Lines* | 11/29/2005 | 1/2/2006 | | $125/Westbound $75/Eastbound | $60/Westbound $30/Eastbound |
| Matson Navigation | 12/9/2005 | 1/1/2006 | 13 to 15% | | |
| *Horizon Lines* | 12/15/2005 | 1/2/2006 | 13 to 15% | | |
| Matson Navigation | 3/10/2006 | 4/2/2006 | 15 to 18.5% | | |
| *Horizon Lines* | Unknown | Approx 4/2006 | 15 to 18.5% | | |
| Matson Navigation | 5/12/2006 | 6/4/2006 | 18.5 to 21.25% | | |
| *Horizon Lines* | 5/23/2006 | 6/5/2006 | 18.5 to 21.25% | | |
| Matson Navigation | 9/21/2006 | 10/1/2006 | 21.25 to 19.75% | | |
| *Horizon Lines* | 9/26/2006 | 10/2/2006 | 21.25 to 19.75% | | |
| Matson Navigation | 10/17/2006 | 11/25/2006 | 19.75 to 18.75% | | |
| *Horizon Lines* | 10/22/2006 | 11/6/2006 | 19.75 to 18.75% | | |
| Matson Navigation | 11/17/2006 | 1/1/2007 | | $100/Westbound $50/Eastbound Approx. 3.3% | $150/Westbound $75/Eastbound Approx. 45-46% |
| *Horizon Lines* | 11/22/2006 | 1/1/2007 | | $100/ Westbound No Eastbound data | $150/Westbound $75/Eastbound Approx 45-46% |

6

CLASS ACTION COMPLAINT

| Company | Date of Announcement | Effective Date | Fuel Surcharge Increase/ Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container) |
|---|---|---|---|---|---|
| Matson Navigation | 1/22/2007 | 1/28/2007 | 18.75 to 17.5% | | |
| Horizon Lines | 1/24/2007 | 1/29/2007 | 18.75 to 17.5% | | |
| Matson Navigation | 2/21/2007 | 3/11/2007 | 17.5 to 19.5% | | |
| Horizon Lines | 2/23/2007 | 3/11/2007 | 17.5 to 19.5% | | |
| Horizon Lines | 4/18/2007 | 5/6/2007 | 19.5 to 20.75% | | |
| Matson Navigation | 4/21/2007 | 5/6/2007 | 19.5 to 20.75% | | |
| Matson Navigation | 5/16/2007 | 5/27/2007 | 20.75 to 22.5% | | |
| Horizon Lines | 5/17/2007 | 5/27/2007 | 20.75 to 22.5% | | |
| Matson Navigation | 7/20/2007 | 8/19/2007 | 22.5 to 24% | | |
| Horizon Lines | 7/26/2007 | 8/20/2007 | 22.5 to 24% | | |
| Horizon Lines | 10/16/2007 | 11/11/2007 | 24 to 25% | | |
| Matson Navigation | 10/22/2007 | 12/2/2007 | 24 to 26% | | |
| Matson Navigation | 11/13/2007 | 12/14/2007 | 26 to 29% | | |
| Horizon Lines | 11/20/2007 | 12/17/2007 | 25 to 29% | | |
| Horizon Lines | 12/26/2007 | 2/4/2008 | 29 to 32% | | |
| Matson Navigation | 1/4/2008 | 2/4/2008 | 29 to 31.5% | | |
| Matson Navigation | 3/11/2008 | 4/6/2008 | 31.5 to 33.5% | | |
| Horizon Lines | 3/12/2008 | 4/7/2008 | 32 to 33.5% | | |

26.    Defendants' fuel surcharge increases far exceeded U.S. crude oil price increases during the relevant period. In fact, the U.S. crude oil price increases were nothing more than a pretext used by Defendants to conspire to raise their prices in unison. A number of Defendants'

7

CLASS ACTION COMPLAINT

1  fuel surcharge increases actually followed U.S. crude oil price decreases demonstrating the
2  pretextual nature of Defendants' fuel surcharge increases.

3      27.    Beginning at least as early as four years from the present, or earlier, the exact dates
4  being unknown to Plaintiff, Defendants and their co-conspirators engaged in a continuing
5  agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain
6  and/or stabilize prices of noncontiguous domestic ocean shipping and/or engaged in market
7  allocation for those services in the United States, its territories and possessions in violation of
8  Section 1 of the Sherman Act (15 U.S.C. § 1).

9      28.    In formulating and effectuating the aforesaid contract, combination or conspiracy,
10  Defendants and their co-conspirators unlawfully combined and conspired, among other things, to
11  allocate markets and/or customers, to raise, fix, stabilize or maintain prices for noncontiguous
12  domestic ocean shipping; to exchange information on customers and capacity; and to monitor and
13  implement the arrangements of the cartel.

14  <center>**CLASS ACTION ALLEGATIONS**</center>

15      29.    Plaintiff brings this action on behalf of himself and as a class action under the
16  provisions of Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of
17  the following class:

18      All persons and entities in the United States, and its territories and possessions,
        who purchased noncontiguous domestic ocean shipping services for service
19      between the continental United States and Hawaii directly from a Defendant
        between at least as early as four years from the date of the Complaint. The class
20      excludes governmental entities, Defendants, co-conspirators, other sellers or
        providers of noncontiguous domestic ocean shipping, and the present and former
21      parents, predecessors, subsidiaries and affiliates of the foregoing.

22

23      30.    Plaintiff believes that there are hundreds, if not thousands of class members as
24  above described, the exact number and their identities being known by Defendants.

25      31.    The class is so numerous and geographically dispersed that joinder of all members
26  is impracticable.

27      32.    There are questions of law and fact common to the Class, which questions relate to
28  the existence of the conspiracy alleged, and the type and common pattern of inquiry sustained as a

<center>8</center>

CLASS ACTION COMPLAINT

1  result thereof, including, but not limited to:

2          a.      Whether Defendants and their co-conspirators engaged in a combination
3  and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of noncontiguous
4  domestic ocean shipping and/or engaged in market allocation for those services sold in the United
5  States, and its territories and possessions;

6          b.      The identity of the participants in the conspiracy;

7          c.      The duration of the conspiracy alleged in this Complaint and the nature and
8  character of the acts performed by Defendants and their co-conspirators in furtherance of the
9  conspiracy;

10         d.      Whether the alleged conspiracy violated Section 1 of the Sherman Act;

11         e.      Whether the conduct of Defendants and their co-conspirators, as alleged in
12  this complaint, caused injury to the business and property of Plaintiff and other members of the
13  Class;

14         f.      The effect of the Defendants' conspiracy on the prices of noncontiguous
15  domestic ocean shipping services sold in the United States and its territories and possessions
16  during the Class Period; and

17         g.      The appropriate measure of damages sustained by Plaintiff and other
18  members of the Class.

19      33.     Plaintiff is a member of the Class, Plaintiff's claims are typical of the claims of the
20  Class members, and Plaintiff will fairly and adequately protect the interests of the members of the
21  Class.  Plaintiff is a direct purchaser of noncontiguous domestic ocean shipping services and his
22  interests are coincident with and not antagonistic to those of the other members of the Class.  In
23  addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution
24  of antitrust and class action litigation.

25      34.     The prosecution of separate actions by individual members of the Class would
26  create a risk of inconsistent or varying adjudications.

27      35.     Defendants have acted, and refused to act, on grounds generally applicable to the
28  Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

9

36.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The Class is readily definable and is one for which records should exist in the files of Defendants and their co-conspirators.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.  This class action presents no difficulties of management that would preclude its maintenance as a class action.

## FRAUDULENT CONCEALMENT

38.    Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior to April 17, 2008, when the DOJ revealed its investigation of the noncontiguous domestic ocean shipping industry.

39.    Plaintiff could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection and affirmatively conceal such violations including, *inter alia*, unscheduled side meetings at trade association meetings, telephone calls, and other unmonitored meetings.

40.    As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the tolling of the applicable statute of limitations affecting the causes of action by Plaintiff and the members of the Class.

10

## COUNT I

### Unlawful Price Setting in Violation of the Sherman Act Section 1, 15 U.S.C. Section 1

41.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

42.    Defendants' unlawful conduct resulted in artificially high, supra-competitive prices being charged by Defendants and their co-conspirators to Plaintiff and the members of the Class for noncontiguous domestic ocean shipping.

43.    Plaintiff and members of the Class had to pay more for these noncontiguous domestic ocean shipping services than they would have paid in a competitive marketplace, unfettered by Defendants' and their co-conspirators' collusive and unlawful price-fixing.

44.    Plaintiff seeks to recover for these overcharge damages.

45.    As a direct and proximate result of Defendants' scheme, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase noncontiguous domestic ocean shipping than he would have paid absent Defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to prevent and flow from that which makes Defendants' conduct unlawful.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A.    That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.    That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.    That judgment be entered for Plaintiff and members of the Class against Defendants for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D.    That Defendants, their affiliates, successors, transferees, assignees, and the

11

CLASS ACTION COMPLAINT

1   officers, directors, partners, agents and employees thereof, and all other persons acting or claiming

2   to act on their behalf, be permanently enjoined and restrained from continuing to engage in the

3   anticompetitive conduct described herein.

4       E.    That Plaintiff and members of the Class have such other, further and different

5   relief as the case may require and the Court may deem just and proper under the circumstances.

6   ## DEMAND FOR JURY TRIAL

7       Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims

8   asserted in this Complaint so triable.

9   DATED: May 9, 2008           HULETT HARPER STEWART LLP

10                              DENNIS STEWART

                            JENNIFER A. KAGAN

13                              DENNIS STEWART

15                              550 West C Street, Suite 1600

                            San Diego, CA 92101

                            Telephone:  (619) 338-1133

16                              Facsimile:    (619) 338-1139

17                              SPECTOR ROSEMAN & KODROFF

18                              EUGENE A. SPECTOR

                            JAY S. COHEN

19                              WILLIAM G. CALDES

                            JONATHAN M. JAGHER

20                              1818 Market Street, Suite 2500

                            Philadelphia, PA 19103

21                              Telephone:  (215) 496-0300

                            Facsimile:    (215) 496-6611

22                              e-mail: classaction@srk-law.com

24                              MURDOCK GOLDENBERG SCHNEIDER &

                              GROH LPA

25                              JOHN C. MURDOCK

                            35 East Seventh Street, Suite 600

26                              Cincinnati, OH 45202

                            Telephone:  (513) 345-8291

27                              Facsimile:    (513) 345-8294

                            e-mail: jmurdock@mgsglaw.com

28

12

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN MCCARTHY, ESQ.
217 Bay Avenue
Somers Point, NJ 08244
Telephone:     (609) 653-1094
Facsimile:      (609) 653-3029

PHILIP A. STEINBERG, ESQ.
124 Rockland Avenue
Bala Cynwyd, PA 19004
Telephone:     (215) 664-0972
Facsimile:      (610) 664-3101

Attorneys for Plaintiff, ROBERT H. STEINBERG

13

CLASS ACTION COMPLAINT